DECISION
{¶ 1} Defendant-appellant, Jarod Richard Bayless, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of drug trafficking.
{¶ 2} On October 5, 2000, appellant was arrested and charged in the Franklin County Municipal Court on three felony counts of trafficking a controlled substance in violation of R.C. 2925.03. The charges resulted from criminal complaints filed the same day that chronicled three separate transactions, one on August 4, 2000 and two on October 5, 2000, during which appellant sold or offered to sell LSD to an undercover narcotics detective. The next day, October 6, 2000, appellant made his initial appearance and posted bail and the court scheduled the preliminary hearing for October 13, 2000.
{¶ 3} On October 13, 2000, prior to holding the scheduled hearing, the municipal court judge dismissed the case without prejudice by written entry upon the motion of the Franklin County prosecutor.[1]
Appellant was thereby released.
{¶ 4} On August 15, 2001, appellant (along with two co-defendants) was indicted by a Franklin County Grand Jury for three counts of drug trafficking resulting from the same transactions as the original complaint. Specifically, appellant was charged with two felony violations of the third degree for selling or offering to sell liquid-form LSD (in an amount equal to or exceeding five grams but less than 25 grams), once on August 4, 2000 and again on October 5, 2000, and one first degree felony violation for selling or offering to sell LSD (in an amount equal to or exceeding 1,000 unit doses but less than 5,000 unit doses) on October 5, 2000. A summons was issued, and appellant waived his appearance at arraignment. Appellant was released on a $20,000 recognizance bond.
{¶ 5} On October 30, 2001, appellant filed a motion to dismiss for lack of a speedy trial. On November 19, 2001, the state filed a responsive memorandum. Appellant subsequently filed two supplemental motions to dismiss and two motions for continuance.
{¶ 6} At a December 5, 2001 hearing, the court overruled appellant's motion to dismiss. And, in the interest of preserving his right to appeal the court's decision, appellant entered a plea of no contest. After the prosecutor offered a recitation of the facts, to which appellant took no exception, the court found appellant guilty on all counts. At the February 1, 2002 sentencing hearing, the court sentenced appellant to concurrent terms of four years on the first degree felony and two years on each of the third degree felonies. Appellant was also fined a total of $20,000 plus restitution and his driver's license was suspended for three years. On February 4, 2001, judgment was entered accordingly.[2]
{¶ 7} By timely appeal, appellant asserts the following assignment of error:
{¶ 8} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO DISMISS BASED UPON HIS CLAIM THAT HE WAS DENIED A SPEEDY TRIAL AND/OR THE 10 MONTH DELAY BETWEEN THE FILING OF THE FORMAL CHARGES AGAINST THE DEFENDANT AND THE INDICTMENT VIOLATED FEDERAL CONSTITUTIONAL PROTECTIONS FOR SPEEDY TRIAL."
{¶ 9} Appellant's argument is two-fold, claiming that he was deprived of both his statutory as well as his constitutional right to a speedy trial. More specifically, appellant argues that for the purpose of calculating the speedy trial period, time was not tolled between the dismissal of the original charge in municipal court and the subsequent indictment; when more than the statutorily prescribed 270 days had elapsed. Additionally, because there was a ten month delay between the original filing of charges and the later indictment, appellant contends that his constitutional right to a speedy trial was also violated. We will address each argument in turn.
{¶ 10} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state; Section 10, Article I of the Ohio Constitution independently assures a similar guarantee. State v. Ladd (1978), 56 Ohio St.2d 197, 200. Ohio's speedy trial statutes, found in R.C. 2945.71 et seq., were implemented to enforce those constitutional guarantees. Brecksville v. Cook (1996), 75 Ohio St.3d 53, 55; State v. Pachay (1980), 64 Ohio St.2d 218, syllabus.
{¶ 11} R.C. 2945.71, as it pertains to appellant, provides:
{¶ 12} "(C) A person against whom a charge of felony is pending:
{¶ 13} "(1) * * * shall be accorded a preliminary hearing within fifteen consecutive days after the person's arrest if the accused is not held in jail in lieu of bail on the pending charge * * *; [and]
{¶ 14} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest."
{¶ 15} R.C. 2945.72 provides a list of reasons under which the speedy trial time frame can be extended, such as "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused" or "[t]he period of any continuance granted on the accused's own motion." R.C. 2945.72(E) and (H). And, R.C. 2945.73 specifies the terms under which an accused can or must be discharged due to delay.
{¶ 16} The speedy trial provisions are mandatory and require strict compliance by prosecutors as well as strict enforcement by the courts. Pachay at 221; State v. Montgomery (1980),61 Ohio St.2d 78, 80. Indeed, upon demonstrating that more than 270 days elapsed before trial commenced, a defendant establishes a prima facie case for discharge. The state then bears the burden of proving that time was sufficiently tolled, thereby extending the speedy trial period so it can be demonstrate the defendant was brought to trial within the statutory time period. State v. Geraldo (1983), 13 Ohio App.3d 27, 28.
{¶ 17} Hence, the proper standard of review in speedy trial cases is to simply count the number of days passed, while determining to which party the time is chargeable, as directed in R.C.2945.71 and 2945.72. State v. DePue (1994), 96 Ohio App.3d 513, 516.
{¶ 18} As established above, appellant was first arrested on October 5, 2000. However, since the day of the arrest is not included in a speedy trial computation, time began to run on October 6, 2000. State v. Jones (1997), 119 Ohio App.3d 59, 64. On October 13, 2000, the municipal court judge dismissed the charges against appellant. Thus, the state is charged with eight days of speedy trial time.
{¶ 19} On August 15, 2001, appellant was indicted. On October 30, 2001, appellant filed his motion to dismiss. Appellant's motion extends the statutory time. R.C. 2945.72(E); State v. Perry (1990), 67 Ohio App.3d 775, 782. The record also shows that appellant requested and was granted a continuance on November 6, 2001 until November 28, 2001. The hearing was then postponed until December 5, 2001 by virtue of a second continuance at appellant's request. The continuances further extend the speedy trial period. R.C. 2945.72(H); State v. Baker (1993), 92 Ohio App.3d 516, 530. Thus, calculating only the time between the indictment and appellant's motion to dismiss, 76 days passed. Tacking on the eight days associated with the related proceedings in municipal court, a total of 84 uncontested days would be charged against the state.
{¶ 20} The essence of this dispute is the period of time between the October 2000 dismissal and the August 2001 indictment. According to the Ohio Supreme Court's holding in State v. Broughton (1991), 62 Ohio St.3d 253, this time is excluded from the calculation of speedy trial time. In Broughton, the court reviewed prior interpretations and applications of the statute and further referenced the underlying rationale of speedy trial jurisprudence in general. Recognizing that R.C. 2945.71 specifies that speedy trial time shall run against the state only when a charge is pending, the court held:
{¶ 21} "* * * [F]or purposes of computing how much time has run against the state under the speedy-trial statute, the time period between the dismissal without prejudice of an original indictment and the filing of a subsequent indictment, premised upon the same facts as alleged in the original indictment, shall not be counted unless the defendant is held in jail or released on bail pursuant to Crim.R. 12(I) [now Crim.R. 12(J)]. * * *" Broughton at 259-260.
{¶ 22} The Broughton court further observed that by so tolling the statute, the interests of both the public and the accused are well served:
{¶ 23} " '* * * After the Government's dismissal of the complaint against him appellant * * * was no longer under any of the restraints associated with arrest and the pendency of criminal charges against him. He was free to come and go as he pleased. He was not subject to public obloquy, disruption of his employment or more stress than any citizen who might be under investigation but not charged with a crime. Unless and until a formal charge was filed against him, neither he nor the public generally could have any legitimate interest in the prompt processing of a nonexistent case against him.' " Id. at 258, quoting State v. Bonarrigo (1980), 62 Ohio St.2d 7, 11, quoting United States v. Hillegas (C.A.2, 1978), 578 F.2d 453, 457-458.
{¶ 24} Hence, since appellant was discharged and there is no indication in the record that his bail was continued, the state argues that the disputed time is excluded, and appellant was prosecuted well within the 270 day statutory limit.
{¶ 25} However, appellant asserts that, because the dismissal of the original complaint was procedurally marred, the disputed time should be included in the speedy trial calculation. Furthermore, in the alternative, appellant claims that his bail was continued following the dismissal; therefore, he was still subject to official prosecution.
{¶ 26} With respect to the latter argument, appellant fails to cite reliable authority to support such a finding. Indeed, the record is void of any indication that bail was continued after dismissal of the charges. And while there is no entry specifically discharging appellant's bail, there is a "Notice of Unclaimed Funds," signed by appellant, referencing a possible refund for the amount of bail deposited since his case had been completed. As such, it appears that bail was, in fact, terminated along with the pending charges. Even if the trial court had invoked former Crim.R. 12(I), bail would have continued only "for a specified time not exceeding fourteen days." Former Crim.R. 12(I). Therefore, even assuming this was the case, the number of days charged against the state would only total 98, a total well below the statutory limit. Appellant's argument regarding this issue is without merit.
{¶ 27} To support his first argument, involving the allegedly flawed dismissal, appellant cites State v. Monroe (June 14, 2000), Pike App. No. 99CA632. In Monroe, the Fourth District Court of Appeals held that, since the prosecution failed to comply with the notice and hearing requirements involved in obtaining a dismissal of the charges, the attempted nolle prosequi was void. Therefore, time under R.C. 2945.71 continued to run, and appellant's right to a speedy trial was violated. Appellant would urge us to reach a similar conclusion. However, because we find Monroe distinguishable from the case at bar, we decline.
{¶ 28} The defendant in Monroe was indicted on a felony charge in May 1997. On October 30, 1997, five months after the defendant had plead not guilty and was released on his own recognizance, the state moved to dismiss the action. Subsequently, on September 10, 1998, the state charged the defendant with a misdemeanor charge based on the same facts as the previous indictment. The defendant moved to dismiss the charges, citing a statutory speedy trial violation. On appeal, the defendant argued that neither he, nor his attorney, knew about the dismissal of the first charge until March 1998, five months later. Record evidence supported this claim. Further, the evidence established that there was no record of a hearing in the defendant's felony case on October 30, 1997. Noting that Crim.R. 48(A) requires the state to file an entry of dismissal "by leave of court and in open court," and R.C. 2941.33 allows a prosecutor to enter a nolle prosequi only with the additional requirement of good cause shown, the Monroe court found the lack of notice and hearing fatal to the state's case.
{¶ 29} In the case sub judice, unlike Monroe, appellant cannot adequately demonstrate that the initial dismissal was similarly flawed. In his brief, appellant claims that he was unaware that the original charges were dismissed until "his preliminary hearing set for 10/15/00." Appellant then calls our attention to the municipal court docket to corroborate his argument that the dismissal occurred without a hearing, without a written motion filed by the state, and without notice to appellant. On the contrary, the municipal court docket reveals that the preliminary hearing was set for October 13, 2000, the day the dismissal was granted. Thus, if appellant had no notice of the dismissal, it would appear that it would be through his own mistake, not that of the state. Further, the state's motion was in writing and can be found on the same piece of paper as the trial court's entry. Finally, there is no evidence to support the contention that the dismissal was not granted in open court; there is only appellant's assertion that he was not there to participate. In the absence of persuasive authority suggesting otherwise, we follow the holding in Broughton and reject appellant's argument as unpersuasive.
{¶ 30} We conclude that no charge was pending against appellant between the dismissal of the original complaint and the subsequent indictment; hence, R.C. 2945.71 was tolled. Since less than 100 days is chargeable to the state, it is clear that appellant was brought to trial within the applicable speedy trial period. We now turn to the second aspect of appellant's assignment of error.
{¶ 31} In Barker v. Wingo (1972),407 U.S. 514, 92 S.Ct. 2182, the United States Supreme Court identified four separate factors to weigh when deciding whether a defendant'sSixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay, i.e., to whom it is attributable; (3) the defendant's assertion of his right; and (4) resulting prejudice to the defendant. Id. at 530. No single factor is dispositive to the inquiry. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533. Still, the Barker court emphasized the importance of the first factor, designating it a "trigger mechanism," and explaining:
{¶ 32} "* * * Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependant upon the peculiar circumstances of the case. * * *" Id. at 530-531.
{¶ 33} Subsequently expounding on that principle, the court observed in Doggett v. United States (1992),505 U.S. 647, 112 S.Ct. 2686, that as the delay approaches one year, it becomes presumptively prejudicial. Id. at 652.
{¶ 34} In State v. Selvage (1997),80 Ohio St.3d 465, 466, the Ohio Supreme Court applied the foregoing reasoning while reaffirming the notion that " '[t]he constitutional guarantees of a speedy trial are applicable to unjustifiable delays in commencing prosecution, as well as to unjustifiable delays after indictment.' " Appellant bases his constitutional argument on this principle, claiming that the ten month delay between the original filing of formal charges and the subsequent indictment violated his constitutional right to a speedy trial. We, however, do not find the factual analysis in Selvage applicable to the instant matter.
{¶ 35} The question before the Selvage court was whether the appropriate statute of limitations for commencing a criminal prosecution is dispositive to a speedy trial inquiry. The court rejected the argument that presumptive prejudice cannot arise until the statute of limitations has expired, reasoning that to do so "would ignore the Barker court's recognition that prejudice to a defendant varies and ought to be reviewed on a case-by-case basis." Id. at 468. After applying the Barker elements to the relevant facts, the court concluded that the defendant was denied her right to a speedy trial.
{¶ 36} In so holding, the court focused on the ten-month delay between the filing of the criminal complaint and the one-year delay between the complaint and the defendant's arraignment. The defendant asserted that, because of that delay, she could not recall her actions on the day of the alleged criminal activities. The court further noted that there was evidence indicating that other actors implicated by the same undercover investigation that produced the charges against the defendant were arrested as much as seven months prior to the defendant's indictment. As such, the court found that the defendant was "left in limbo for [that time] and not given an opportunity to answer the criminal charges against her." Id. at 469. All factors considered, the court concluded that the state failed to exercise reasonable diligence in prosecuting the defendant, thus depriving her of her right to a speedy trial.
{¶ 37} When considering speedy trial issues, we recognize that the peculiar circumstances of each case must be considered. However, unlike the Selvage court, after analyzing the circumstances surrounding this appellant's case, we cannot say that the delay amounted to a violation of his right to a speedy trial. As explained above, the first aspect to consider is the length of the delay. In the instant case, ten months passed between the filing of the original complaint and appellant's indictment. Relying on Selvage, appellant contends that this delay rises to the level of presumptive prejudice. We note that the Selvage court focused on two separate periods, one ten months long and another one year in duration, when analyzing the applicable length of delay. Thus, it is difficult to discern whether that decision advocates a finding that ten months is presumptively prejudicial.
{¶ 38} Regardless, unlike either delay present in Selvage, any delay in the case at bar was conspicuously broken by appellant's arrest and charge in municipal court. As such, the initial criminal complaint was immediately followed by his arrest and appearance in court, just as the later indictment was followed by a timely determination of the charges brought against him. Between the dismissal of the original charges and the subsequent indictment, there is no evidence that the state failed to exercise reasonable diligence. In fact, the record indicates that the analysis of the drugs confiscated from appellant was not completed until January 2001. And, two other defendants were implicated in the same August indictment, which recounted several criminal transactions. Thus, appellant experienced no period of "limbo" akin to that of the defendant in Selvage. Furthermore, the existence of said co-defendants suggests that the state's investigation was more complex, and thus more time-consuming, than that for an ordinary street crime.[3] When put into context, we simply cannot say that the ten-month delay in the case at bar crosses the threshold for presuming prejudice.
{¶ 39} Furthermore, even assuming that threshold was crossed, there is no indication that appellant actually suffered any resulting prejudice. He was not subjected to lengthy pretrial incarceration and he remained gainfully employed. Indeed, appellant suffered no apparent curtailment of his liberty, and was, for all intents and purposes, free of any public accusation or humiliation. In his brief to this court, appellant argues that his memory as to the relevant facts has lapsed to the detriment of his defense. However, no evidence to that effect is present in the record. To the contrary, on at least one occasion, appellant recalled the events sufficiently to advance the argument that his participation in the criminal activities was limited to acting as a driver for his co-defendants and the introduction of those men to the undercover agents. Appellant's contention here must be viewed as unpersuasive.
{¶ 40} Based on the foregoing, we find that appellant's statutory and constitutional rights to a speedy trial were uninhibited by the state. Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and PETREE, J., concur.
[1] Although the municipal court docket confirms October 13, 2000 as the scheduled date for the preliminary hearing, appellant's counsel indicates that neither he nor appellant knew of the dismissal until appearing for the preliminary hearing scheduled for October 15, 2000.
[2] An amended judgment entry was subsequently filed on February 8, 2001, to correct an inadvertent typographical error in the original entry; however, no substantive changes were made.
[3] In Barker, the court noted that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker at 531.